IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

LEISA BATTLE, :
:
    Plaintiff, :
:
vs. : CIVIL ACTION 10-0548-M
:
MICHAEL J. ASTRUE, :
Commissioner of Social Security,:
:
    Defendant. :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13-14). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 22). Oral argument was waived in this action (Doc. 23). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further proceedings not inconsistent with the Orders of this Court.

1

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty years old, had completed a high school education (Tr. 109), and had previous work experience as a cashier and seamstress (Tr. 16). In claiming benefits, Plaintiff alleges disability due to migraine headaches, cervical degenerative disc disease, hypertension, and depression (Doc. 14 Fact Sheet).

The Plaintiff filed applications for disability insurance and SSI on December 5, 2007 (Tr. 90-95; *see* Tr. 39). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Battle was capable of performing her past relevant work as a cashier (Tr. 36-40). Plaintiff

requested review of the hearing decision (Tr. 6-7) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Battle alleges that:  (1) The Appeals Council did not properly consider the opinions and conclusions of the treating physician; (2) the ALJ failed to properly evaluate her pain; (3) the ALJ's residual functional capacity (hereinafter *RFC*) is unsupported by the evidence; and (4) the ALJ improperly rejected evidence of depression (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 18).  The relevant medical evidence of record follows.

On January 21, 2000, an MRI of the cervical spine, without contrast, demonstrated that Battle suffered moderate degeneration in the C4-5 and C5-6 discs with posterior bulging at both levels, but no definite neural impingement was seen (Tr. 160).  The findings were more asymmetric to the right; no neural foraminal stenosis and significant facet arthritis was seen.

Records from the DCH Health System Emergency Room records show an admission on July 10, 2005 following three days of suffering from a migraine headache with symptoms of photophobia

and nausea; she was treated with a Demerol[1] and Phenergan[2] (Tr. 172-74).  On August 17, 2006, following two days of a migraine, accompanied by vomiting, Plaintiff was treated with Fiorinol[3] (Tr. 164-66).  On December 21, 2007, Battle went to DCH on the fourth day of a migraine and was given Demerol and Phenergan (Tr. 161-63).

Records from the Hale County Hospital Clinic show that Battle was treated for a tension headache of several days' duration on January 18, 2005 with Phenergan and Demerol; her blood pressure was elevated (Tr. 221; *see generally* Tr. 203-32).  A headache and hypertension were noted on August 2, 2005 (Tr. 219).  In November, Battle complained of daily headaches (Tr. 217).  Plaintiff was seen in the Clinic on January 13, 2006, following an ER visit for a migraine, when depression and anxiety were noted; Battle was given prescriptions for Fioricet and Elavil[4] (Tr. 215). On March 2, Plaintiff complained of a two-day headache for which she was given a prescription for Fioricet

---

[1] **Error! Main Document Only.***Demerol* is a narcotic analgesic used for the relief of moderate to severe pain.  *Physician's Desk Reference* 2570-72 (52nd ed. 1998).
[2] **Error! Main Document Only.***Phenergan* is used as a light sedative. *Physician's Desk Reference* 3100-01 (52nd ed. 1998).
[3] **Error! Main Document Only.***Fiorinal* is used for relieving tension (or muscle contraction) headaches.  *Physician's Desk Reference* 1855-57 (52nd ed. 1998).
[4] **Error! Main Document Only.***Amitriptyline*, marketed as *Elavil*, is used to treat the symptoms of depression.  *Physician's Desk Reference*

4

(Tr. 214). X-rays of the cervical and thoracic spine on October 15, 2006 suggested minimal spurring on the anterior margin of the C5-6, but no gross deformity; the thoracic spine was normal (Tr. 226). A migraine headache on October 25 resulted in prescriptions for Fioricet with codeine and Toradol[5] (Tr. 213). On November 7, Plaintiff complained of headaches and depression for which she was prescribed Fioricet with codeine and given samples of Wellbutrin[6] (Tr. 212); these two prescriptions were given again on January 8, 2007 when Battle complained of headaches (Tr. 211). A three-day migraine on February 2 prompted renewal of the medications (Tr. 210). On March 2, Plaintiff complained of a headache lasting for two days with vomiting; she had no medications and was prescribed Toradol (Tr. 208). On August 3, 2007, Battle was diagnosed with a migraine headache and hypertension and was prescribed Toradol, Fioricet with codeine, and Verapamil[7] (Tr. 207). On October 18, it was noted that Plaintiff complained of a headache and had a history of migraines, but that she did not refill her prescription for

---

3163 (52nd ed. 1998).

[5]*Toradol* is prescribed for short term (five days or less) "management of moderately severe acute pain that requires analgesia at the opioid level." *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

[6]**Error! Main Document Only.***Wellbutrin* is used for treatment of depression. *Physician's Desk Reference* 1120-21 (52nd ed. 1998).

[7]*Verapamil* is used for the treatment of hypertension. **Error! Main Document Only.***Physician's Desk Reference* 3070-71 (62nd ed. 2008).

the Fioricet (Tr. 206). On March 11, 2008, Battle complained of middle and left shoulder pain for which she was given prescriptions for Mobic[8] and Flexeril[9] (Tr. 205). A three-day headache sent Plaintiff to the Clinic on April 22 for which she received a prescription of Fioricet (Tr. 204). On June 6, Battle complained of a headache and said that she had run out of her medications; she was prescribed Fioricet with codeine and Toradol (Tr. 203).

Emergency Room records from the Hale County Hospital show that Plaintiff presented to the Hospital and was treated for migraine headaches on January 11, 2006 (Tr. 287-88 *see generally* Tr. 233-88), October 31, 2006 (Tr. 264-65), September 9, 2007 (Tr. 248-51), June 13, 2008 (Tr. 237-41); she was treated for tension headaches on the following dates: March 29, 2006 (Tr. 281-83), July 15, 2006 (Tr. 271-72), September 25, 2006 (Tr. 268-29), October 21, 2006 (Tr. 266-67), January 1, 2007 (Tr. 260-63).

On February 22, 2008, Dr. James R. Saxon performed a

---

[8]**Error! Main Document Only.***Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis. *Physician's Desk Reference* 855-57 (62nd ed. 2008).

[9]**Error! Main Document Only.**Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions." *Physician's Desk Reference* 1455-57 (48th ed. 1994).

consultative examination of Battle who told him that she had not been able to afford her prescriptions and was having to take over the counter medications to alleviate her pain (Tr. 176-79). The doctor noted blood pressure of 120/88 and a pulse of 88; Plaintiff had mild pain on range of motion (hereinafter *ROM*) testing of her cervical spine. Pinprick sensation was less in the left arm and leg compared to the right; gait was normal. Saxon's assessment was cervical degenerative disc disease and arterial hypertension; in performing ROM testing, Saxon noted some limitations, not specified herein.

Hale County Hospital ER records show that Plaintiff was treated on September 11, 2008 for a migraine hospital with Toradol and Phenergan (Tr. 362-69). On September 20, Battle was given Lortab[10] to treat her hypertension headache and prescribed Darvocet[11] (Tr. 354-61). Five days later, Plaintiff was treated for malignant hypertension and headaches (Tr. 348-53). On October 9, 2008, Battle underwent a bilateral carotid doppler ultrasound that showed that she had up to fifty percent stenosis involving the internal carotid artery on each side, but no

---

[10]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[11]**Error! Main Document Only.**Propoxyphene napsylate, more commonly known as Darvocet, is a class four narcotic used "for the relief of mild to moderate pain" and commonly causes dizziness and sedation.

evidence of hemodynamically significant stenosis (Tr. 345-47).
On November 23, Battle was given Toradol and Phenergan for a
migraine (Tr. 337-44).

Records from the Hale County Hospital reveal that Battle
was treated for migraine headaches on June 25, 2009 (Tr. 316-23;
*see generally* Tr. 299-325) and August 29-30, 2009 (Tr. 299-315).

On September 2, 2009, Psychologist John R. Goff examined
Plaintiff and found her oriented in all spheres; logical memory
for verbal material was poor (Tr. 326-33). The results of the
WAIS-R were a full scale IQ score of 70, the lower end of the
borderline range of psychometric intelligence; other testing
showed that Battle was functionally literate. Goff thought that
Plaintiff was more intelligent than the testing showed; the
suggested diagnosis was paranoid personality disorder and
depression. The Psychologist completed a medical source opinion
form in which he indicated that Battle was extremely limited in
her ability to respond appropriately to supervision, co-workers,
and customary work pressures; he also indicated that she was
markedly limited in her ability to do the following: deal with
changes in a routine work setting, respond appropriately to
customers or other members of the general public, use judgment

---

*Physician's Desk Reference* 1443-44 (52nd ed. 1998).

8

in simple one- or two-step, detailed, or complex work-related decisions, and maintain attention, concentration or pace for periods of at least two hours.

On January 21, 2000, Plaintiff underwent an MRI of the cervical spine, without contrast, which showed moderate degeneration of the C4-5 and C5-6 with posterior bulging at both levels; there was no definite neural impingement (Tr. 335). The findings were more asymmetric to the right compared to the left which is opposite of what was expected based on Battle's complaints.

Following the ALJ's determination, Plaintiff's attorney submitted more medical information for the Appeals Council to consider (Tr. 377-78; *see also* Tr. 379-463). That evidence will not be summarized herein.

Records from Hale County Hospital show that Battle was seen on September 12, 2009 for a headache and hypertension for which she was given Phenergan and Celebrex[12] (Tr. 456-63). On October 11, Plaintiff was given Phenergan and Toradol for a headache (Tr. 448-55). On April 3, Plaintiff was given Demerol and Phenergan for a migraine headache (Tr. 418-23).

---

[12]**Error! Main Document Only.***Celebrex* is used to relieve the signs and symptoms of osteoarthritis, rheumatoid arthritis in adults, and for the management of acute pain in adults. *Physician's Desk*

9

On March 13, 2010, Plaintiff went to Hale County Hospital but was transferred (Tr. 437-47) to DCH Regional Medical Hospital where it was determined that she had an aneurismal subarachnoid hemorrhage (Tr. 400-16). She was then transferred to the University of Alabama in Birmingham Hospital on March 14-30, 2010 for neurological surgery; Battle made an excellent recovery and was found to be neurologically intact on discharge (Tr. 387-400).

Records from the Hale County Hospital Clinic on October 30, 2009 show that Plaintiff came in with a headache and no medications; she was prescribed Fioricet with codeine, blood pressure medication, and Elavil (Tr. 386). Battle was seen again on January 5, 2010, saying that her headaches were much better; she was treated for hypertension (Tr. 384). Plaintiff was seen on April 5 as a follow-up to the aneurysm that she had suffered two weeks before (Tr. 383).

On April 26, 2010, Dr. Perry Timberlake, one of Battle's treating doctors at the clinic, completed a medical source statement in which he indicated that Battle was capable of sitting and standing or walking for two hours during an eight-hour day; she was also capable of lifting five pounds

---

*Reference* 2585-89 (58th ed. 2004).

occasionally and one pound frequently (Tr. 380). Timberlake further indicated his belief that Plaintiff, only on rare occasions, should use arm and/or leg controls, climb, engage in gross or fine manipulation, bend and/or stoop, reach, and operate motor vehicles but should never work with or around hazardous machinery. The doctor thought that Battle would likely be absent from work more than three times a month due to impairments or treatment; it was his opinion that these limitations were confirmed by objective evidence and normally expected from the type and severity of her impairments. Dr. Timberlake also completed a pain assessment in which he indicated the following: Plaintiff's pain would distract her from adequately performing her daily activities; physical activity would increase her pain to an extent that she would require bed rest or medication; and that medication would place severe limitations on the most simple tasks for her (Tr. 381). Timberlake thought that Battle's medical condition would be expected to produce the pain which she claimed to experience and that the pain would prevent her from maintaining attention, concentration or pace for periods of two hours or more.

    This concludes the medical evidence of record.

    Plaintiff's first claim is that the Appeals Council did not

11

properly consider the opinions and conclusions of the treating physician.  Battle refers to the medical source statement and pain questionnaire completed on April 26, 2010 by Dr. Perry Timberlake (Doc. 13, pp. 9-11; Tr. 380-81).  This was part of the medical evidence submitted to the Appeals Council after the ALJ's decision had been rendered.

It should be noted that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence." *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985).  However, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review." *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).  Under *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1264 (11th Cir. 2007), district courts are instructed to consider, if such a claim is made, whether the Appeals Council properly considered the newly-submitted evidence in light of the ALJ's decision.  To make that determination, the Court considers whether the claimant "establish[ed] that:  (1) there is new, noncumulative evidence; (2) the evidence is

'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

In examining the action at hand, the Court notes that Plaintiff is claiming that the ALJ's decision is not supported by substantial evidence and also challenges the Appeals Council's decision in finding no basis to change the ALJ's decision (Doc. 13, pp. 9-10). The Court further notes that the Appeals Council denied any basis for changing the ALJ's opinion; it stated, however, that it had considered the newly-submitted evidence (Tr. 1-5). The Court has already summarized the new evidence above and will now examine it under *Caulder*.

The Court finds that Dr. Timberlake's medical source opinion would render Plaintiff incapable of performing any work whatsoever as she is capable of sitting and standing or walking for only two hours during an eight-hour day (Tr. 380). This is less than a full day's work. Furthermore, the doctor found her capable of lifting only five pounds occasionally and one pound frequently (Tr. 380). This does not satisfy the lifting

requirements for sedentary work.[13]  Dr. Timberlake's pain assessment renders Battle's ability to work seem even more unlikely.  The Court finds that this satisfies the first prong of *Caulder* as the medical evidence from Dr. Timberlake is non-cumulative to the other evidence of record.

The second *Caulder* prong is a query as to whether the evidence is "material," that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result.  In his less than five-page decision, the ALJ discounted Plaintiff's testimony as contradicted by the evidence (Tr. 38).  In weighing the medical evidence, he gave significant weight to a non-examining State physician with regard to Battle's mental abilities, great weight to a State agency non-medical source's opinions regarding Plaintiff's physical abilities, and "significant weight to Dr. Saxon's opinion that there was no identifiable evidence for a determination of disability" (Tr. 39).

The Court notes that although Dr. Saxon did perform Range

---

[13]**Error! Main Document Only.**"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a) (2010).

of Motion testing, he expressed no opinion as to Battle's ability to perform any of the activities associated with performing a day's work (Tr. 176-79). The only examining physician who provided any such evidence was Dr. Timberlake; a physical RFC assessment was completed by a non-examining non-medical person which the ALJ assigned great weight (Tr. 181-88). As Dr. Timberlake's report directly contradicts that of the non-examining non-medical person, the Court finds that there is a reasonable probability that the administrative result would be different if the ALJ had had an opportunity to view it.

The third prong of *Caulder* is a query as to whether there is good cause for the failure to submit the evidence at the administrative level. The Court finds that this requirement is satisfied because the evidence did not exist at the time the ALJ rendered his decision; he did not have the opportunity to consider it. Though the Appeals Council says that it considered[14] the evidence, the Court finds that its decision not to review the ALJ's decision is not supported by substantial

---

[14]Plaintiff has questioned whether the Appeals Council even really considered the evidence in light of its "Exhibits List" which lists the new evidence as coming only from the University of Alabama (Doc. 13, p. 10; *cf.* Tr. 5; *see also* Tr. 378). The Court accepts the Council's affirmation, but notes that it is less than convincing that the evidence was actually considered in light of its failure to properly acknowledge all of the evidence submitted.

evidence.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Therefore, it is recommended that the action be reversed and remanded to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the gathering of evidence regarding Plaintiff's ability to work. For further procedures not inconsistent with this recommendation, see *Shalala v. Schaefer*, 509 U.S. 292 (1993). Judgment will be entered by separate Order.

DONE this 28th day of April, 2011.

<pre>
                              s/BERT W. MILLING, JR.
                              UNITED STATES MAGISTRATE JUDGE
</pre>